UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80887-CV-ROSENBERG
MAGISTRATE JUDGE REID

FELIX ORTIZ,

Plaintiff,

v.

GEO CORP.,
et al.,

Defendant(s).

_____/

**REPORT OF MAGISTRATE JUDGE**

**I. Introduction**

This Cause is before the Court upon Plaintiff's *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983. [ECF No. 7]. Plaintiff, confined at South Bay Correctional Facility ("South Bay"), presents a variety of claims related to his medical care in prison after he suffered an injury in the prison recreation yard. [*Id*.]. He brings this cause of action against Defendants Geo Corporation ("Geo Corp."), Warden Claude Maye ("Warden Maye"), Dr. Jules Heller ("Dr. Heller"), and ARNP Ms. Amede ("Nurse Amede"). [*Id*.]. This matter has been referred to the Undersigned for consideration and report pursuant to S.D. Fla. Admin. Order 2019-2. As set forth below, the Court should dismiss this case with prejudice for failure to state a claim. [ECF No. 2].

**II. Claims**

Liberally construed, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Plaintiff raises the following claims:

1) Nurse Amede and Dr. Heller were deliberately indifferent to Plaintiff's serious medical needs for:

   (a) failing to provide immediate medical attention;
   (b) disregarding a specialist's instructions;
   (c) failing to provide Plaintiff's prescribed medication;
   (d) failing to properly diagnose Plaintiff's injuries;

2) GEO Corp. is liable for the unconstitutional actions of its employees, Nurse Amede and Dr. Heller;

3) Warden Maye was deliberately indifferent to Plaintiff's serious medical needs or is otherwise liable for failure to train his employees based on his failure to track prison grievances and complaints against staff;

4) All, or some of the defendants, are liable in their official capacity; and

5) GEO Corp. and Warden Maye are liable under Fla. Stat. § 768.28.

[ECF No. 7].

### III. Allegations

Plaintiff asserts that while playing softball in the recreation yard, he suffered an injury to his leg and ankle area which prevented him from being able to stand. [ECF No. 7]. Plaintiff was carried to the medical department, but claims that he was not given any medical attention. [*Id.*].

The Monday following the incident, Nurse Amede examined the injury. [*Id.*]. At the time, Plaintiff's leg had large blisters and spots on both sides due to the injury. [*Id.*]. Plaintiff also alleges that one side was red, as if it were full of blood, and the other side was white. [*Id.*]. Plaintiff asserts that he was treated with "500 mg of Naproxen." [*Id*.].

Plaintiff avers that he repeatedly complained to Nurse Amede and Dr. Heller about his condition worsening and his pain "becoming unbearable." [*Id.* at 4]. Nurse Amede placed Plaintiff in the infirmary. [*Id.*]. After being in the infirmary for an unspecified amount of time, Movant was sent to see a specialist at Royal West Palm Beach Hospital. [*Id.*].

The specialist performed an MRI. [*Id.*]. During a follow-up visit, Plaintiff learned that corrective surgery was needed for his Achilles tendon. [*Id.*]. Plaintiff had surgery, and after the surgery medical professionals at the hospital provided specific instructions that the dressing on his wound was not to be removed. [*Id.*]. Upon Plaintiff's return to South Bay, the prison's "medical department" removed the dressing. [*Id.*]. Plaintiff contends that the removal of the dressing "tore away the covering that was preventing the wound from becoming infected." [*Id.*].

Plaintiff was then taken back to Royal West Palm Beach Hospital for a check-up, where the hospital staff re-dressed the wound and provided instructions that the dressing not to be changed or removed. [*Id.*]. A doctor at the hospital also asked Plaintiff whether the pain medication he was given after surgery helped in managing the post-surgery pain. [*Id.* at 5]. Plaintiff asserts that he was not receiving any pain medication at the prison. [*Id.*].

At Plaintiff's next follow-up visit at the hospital, a hospital official again asked Plaintiff whether the pain medication helped him manage the post-surgery pain. [*Id.*]. Plaintiff, for the second time, informed the doctor that he was not receiving medication in prison. [*Id.*]. Plaintiff alleges the hospital doctor called Plaintiff's facility to inquire as to why Plaintiff was not receiving prescribed medication. [*Id.*]. Plaintiff claims the doctor was told that Plaintiff was receiving his medication, but Plaintiff does not explain how he knows this. [*Id.*]. Plaintiff experienced "severe pain" during this unspecified time. [*Id.* p. 5]. He claims that when it came time to remove the stitches, the wound bled "excessively" and had a terrible odor caused by infection. [*Id.*]. He claims this was due to South Bay's repeated removal of the dressing. [*Id.*].

Plaintiff argues that Dr. Heller and Nurse Amede are liable for deliberate indifference to his serious medical needs. Plaintiff's claim against these defendants arise under several theories: (1) Dr. Heller and Nurse Amede should have been aware of a need for immediate medical

treatment; (2) Dr. Heller and Nurse Amede ignored a specialist's instructions to refrain from removing the bandage around the wound; (3) Dr. Heller and Nurse Amede failed to provide medication; and (4) Dr. Heller and Nurse Amede failed to properly diagnose Plaintiff's injury. [ECF No. 7 at 7-9].

Plaintiff also claims that GEO Corp. and Warden Maye are liable for their actions pursuant to Fla. Stat. § 768.28. [*Id.*]. Plaintiff further contends GEO Corp. has policies, practices, customs, or procedures that fail to follow the instructions of specialists. [*Id*. at 8-9]. Plaintiff claims Warden Maye should be held liable for his failure to train, establish procedures, or for deliberate indifference to serious medical needs. [*Id*. at 9-10]. In support, he asserts Warden Maye failed to track the medical complaints and grievances lodged against South Bay employees during and after the surgery. [*Id*].

### IV. Standard of Review

According to 28 U.S.C. § 1915 of the Prison Litigation Reform Act, which permits *in forma pauperis* (IFP) proceedings, it reads in pertinent part:

> (e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that -
>
> * * *
>
> (B) the action or appeal -
>
> * * *
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

Plaintiff is proceeding IFP. [ECF No. 8]. Thus, the Amended Complaint is subject to the screening requirements of 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Farese v. Scherer*, 342 F.3d 1223, 1228 (11th Cir. 2003) (explaining this principle in a RICO suit); *Floyd v. City of Miami Beach*, 730 F. App'x 838, 841 (11th Cir. 2018) (applying this principle in a § 1983 context).

When determining whether a pleader has stated a claim upon which relief can be granted, factual allegations must be accepted as true, and legal conclusions are not entitled to that assumption. *See Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1106-07 (11th Cir. 2015) (relying upon *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Further, while *pro se* filings are held to less stringent standards than pleadings drafted by attorneys, *see Haines*, 404 U.S. at 520-21, *pro se* filings must suggest the existence of "some factual support for a claim." *Jones*, 787 F.3d at 1107.

The assumed-as-true factual allegations must cross "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A claim is plausible is a context-specific inquiry if courts can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79.

## V. Applicable Law

A. <u>Deliberate Indifference to Serious Medical Needs</u>

Deliberate indifference to a prisoner's serious medical needs amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *McElligot v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

To prevail on a deliberate-indifference claim, a plaintiff must show: (1) a serious medical need; (2) deliberate indifference to that need; and (3) causation between that indifference and the injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

"[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for

a doctor's attention." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (1994) (citations omitted), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *see also Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007). "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

As for determining what conduct or lack of conduct qualifies under the deliberate indifference component, plaintiffs must satisfy three requirements: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence. *See Melton v. Abston*, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016).

Causation, the final requirement for a deliberate indifference claim, requires a link between the injury and the constitutional violation. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). In other words, the unconstitutional act must be a proximate cause of the injuries, *see LaMarca v. Turner*, 995 F.2d 1526, 1538-39 (11th Cir. 1993), or should otherwise show the defendant's personal participation in the constitutional violation. *Goebert*, 510 F.3d at 1327.

To illustrate the high bar of such a claim, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Similarly, a simple difference in medical opinion between a prison's medical staff and the inmate as to the inmate's diagnosis or course of treatment cannot support a deliberate indifference claim. *See id.* Once an inmate receives medical care, courts are reluctant to question the adequacy of medical care provided to the inmate. *See, e.g.*, *Harris*, 941 F.2d at 1507; *Lloyd v. Van Tassell*, 318 F. App'x 755, 760 (11th Cir. 2009).

B. <u>Individual Capacity</u>

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).

C. <u>Vicarious Liability, *Respondeat Superior,* and Supervisory Liability</u>

In the context of reviewing individual liability claims, "[s]ection 1983 will not support a claim based on *respondeat superior*[.]" *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dept., of Social Servs.*, 436 U.S. 658, 693 (1978)). Thus, a claim arguing a supervisory official is vicariously liable for the unconstitutional acts of his or her subordinates must fail. *See Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994).

Supervisory liability may exist only if (1) the supervisory official personally participates in the alleged unconstitutional conduct or (2) when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

The causal connection can be established four different ways. *See id.* First, "[a] causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so[.]'" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). Second, a causal connection exists "when the supervisor's improper 'custom or policy resulted in deliberate indifference to constitutional rights[.]'" *Gonzalez*, 325 F.3d at 1234 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)). Third, "[a] causal connection can be established by facts which support an inference that the

supervisor directed the subordinates to act unlawfully[.]" *Gonzalez*, 325 F.3d at 1234. Finally, when there are facts supporting an inference that the supervisor "knew…subordinates would act unlawfully and failed to stop them from doing so," a causal connection can be established. *Gonzalez*, 325 F.3d at 1234.

D. Official Capacity (*Monell* liability)

"When suing local officials in their official capacities under § 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (footnote omitted). This sort of liability, which is imposed upon a municipality for the unconstitutional actions of its employees, is often referred to as a *Monell* claim or *Monell* liability. *See, e.g.*, *Martin v. City of Macon, Georgia*, 702 F. App'x 941 (11th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

To establish *Monell* liability, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality had a custom or policy to his constitutional rights; and, (3) the policy or custom caused the violation of his constitutional rights. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Additionally, only those officials who have final policymaking authority may render the municipality liable under § 1983 for *Monell* liability. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003).

## VI. Discussion

A. Claims Against Nurse Amede and Dr. Heller

*i. Failure to Provide Immediate medical Attention*

With respect to whether Nurse Amede and Dr. Heller exhibited deliberate indifference to serious medical needs for not providing immediate medical treatment, Plaintiff has failed to state a claim. Plaintiff did not allege that Nurse Amede or Dr. Heller knew of the injury when it

happened. As such, Plaintiff failed to show their subjective knowledge of a serious medical need. *See Melton*, 841 F.3d at 1223 n.2.

Even if they had known an injury occurred, Plaintiff has not provided any allegations describing the injury as it existed on the day of his injury. Although Plaintiff asserted he was unable to stand that day, this information alone would not lead an individual to infer there was a substantial risk of serious harm. *See Melton*, 841 F.3d at 1223. Without allegations to that effect, Plaintiff cannot show Nurse Amede's and Dr. Heller's conduct was beyond mere negligence or that they disregarded a substantial risk of serious harm. *See id.*

### *ii. Ignoring a Specialist's Instructions*

Plaintiff has also failed to state a claim against Nurse Amede and Dr. Heller for ignoring a specialist's instructions. To be exact, Plaintiff alleged that "the medical department removed the dressing" and that Dr. Heller and Nurse Amede should be held liable because the medical department is "under the supervision of Dr. Heller and Nurse Amede." [ECF No. 7 at 4]. Liberally construed, this claim relies upon a theory of *respondeat superior*. Because claims of *respondeat superior* or vicarious liability are not cognizable under § 1983, this claim fails. *See Cottone*, 326 F.3d at 1360.

To the extent Plaintiff alleges Nurse Amede and Dr. Heller are liable under a theory of supervisory liability, he also failed to state a claim. Plaintiff's allegations lack any allegations of personal participation. *See id.* In addition, Plaintiff fails to provide any allegations of a widespread abuse, a pertinent custom, policy, or practice, or an instruction to subordinates to act unlawfully. *See Gonzalez*, 325 F.3d at 1234. There are also no allegations indicating these officials knew subordinates would act unlawfully. *See id.* Thus, Plaintiff failed to state a claim under a theory of supervisory liability.

### *iii. Failing to Provide Medication*

Similarly, with respect to Plaintiff's allegations that Nurse Amede and Dr. Heller failed to provide him his medication, Plaintiff's Amended Complaint lacks sufficient facts to state a claim. Plaintiff provides no allegations that Dr. Heller or Nurse Amede were personally involved or otherwise knew that Plaintiff was not being provided his medications. Instead, Plaintiff vaguely alleges that an official at South Bay told a hospital doctor that he was receiving his prescriptions. [ECF No. 7 at 5]. Plaintiff provides only conclusory assertions that Nurse Amede or Dr. Heller knew that he was not being provided his medication. [*Id.* p. 8] ("Despite their knowledge, or due to their deliberate indifference in assessing Plaintiff's condition,…[Defendants] failed to provide Mr. Ortiz proper medication[.]"). Liberally construing Plaintiff's allegations, he has relied upon a theory of *respondeat superior* or vicarious liability. However, such claims are not cognizable. *See Cottone*, 326 F.3d at 1360.

However, even if Plaintiff meant to argue that Nurse Amede and Dr. Heller are liable under a theory of supervisory liability, he fails to establish their personal participation or provide allegations to show a causal connection existed. *See Gonzalez*, 325 F.3d at 1234. This claim, therefore, must be dismissed for failure to state a claim.

### *iv. Failure to Properly Diagnose Plaintiff's Injury*

Plaintiff also failed to state a claim under a theory that Nurse Amede and Dr. Heller failed to properly diagnose Plaintiff's injury. Plaintiff alleges that he repeatedly complained to Nurse Amede and Dr. Heller about his condition worsening and his pain becoming unbearable before he was placed in the infirmary and ultimately transferred out of the institution to see a specialist. [ECF No. 7 at 4].

Within a week, Nurse Amede examined Plaintiff's leg and provided him with 500 mg of Naproxen. Naproxen is a nonsteroidal anti-inflammatory drug ("NSAID") used to relieve pain, fever, swelling, and stiffness. *Ray v. Corizon Med. Grp.*, Case No. 3:15-CV-1486-J-39PDB, 2018 WL 3817762, at *7 (M.D. Fla. Aug. 10, 2018); *see also Kellar v. Fla. Dep't of Corr.*, Case No. 4:14-CV-84-RH-GRJ, 2016 WL 8679264, at *4 (N.D. Fla. Oct. 21, 2016); *Monteleone v. Corizon*, Case No. 5:14CV65-WS, 2015 WL 1458283, at *5 (N.D. Fla. Mar. 27, 2015), aff'd, 686 F. App'x 655 (11th Cir. 2017).

As such, even if Plaintiff's medical needs were objectively serious and Nurse Amede knew that medical needs existed, Plaintiff failed to provide allegations that treating him with Naproxen amounted to a disregard of a substantial risk of serious harm. Plaintiff also fails to provide allegations showing how Nurse Amede's conduct was beyond mere negligence within the first week of the injury. Mere negligence, and even malpractice, in failing to identify the severity of the injury or in the course of treatment does not state a claim under the Eighth Amendment. *See Harris*, 941 F.2d at 1505-07 (explaining that a defendant's mere negligence is not enough, courts are reluctant to find deliberate indifference when the Plaintiff has received treatment, and mere disagreement with course of treatment does not violate the Eighth Amendment).

Plaintiff is also vague and conclusory in detailing any interactions with Dr. Heller. Thus, Plaintiff has not plausibly established that Dr. Heller knew of a risk of serious harm or that Dr. Heller's conduct exceeds mere negligence. Even if Dr. Heller saw Plaintiff within the first week of the injury, any failure in identifying the severity of the injury would have been conduct below mere negligence, especially because Plaintiff received treatment and medical attention at the hospital. *See Harris*, 941 F.2d at 1505-07

Finally, although Plaintiff alleged that he repeatedly complained to Nurse Amede and Dr. Heller, he did not provide an approximate timeframe or sufficient specificity as to the content of his various complaints. Without allegations to that effect, Plaintiff has not shown Nurse Amede and Dr. Heller knew of a substantial risk of serious harm, that their conduct of placing Plaintiff in the infirmary disregarded such a risk, or that their conduct was beyond mere negligence. Plaintiff's allegations that he was given Naproxen, placed in the infirmary, and sent to see a specialist undercuts that Nurse Amede's and Dr. Heller's conduct was plausibly beyond mere negligence in this case.

All claims against Nurse Amede and Dr. Heller should, therefore, be dismissed for failure to state a claim.

B. Claims Against GEO Corp.

Under § 1983, corporations cannot be held liable for the conduct of their employees. *See Harvey v. Harvey*, 949 F.2d 1127, 1129 (11th Cir. 1992). However, a corporation can be liable for a policy or custom that causes a constitutional violation. *See Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).

Although Plaintiff avers that GEO Corp., through its employees, implements a policy, custom, or practice, his allegations are vague and conclusory in identifying the particular procedure that caused a constitutional violation. He also does not identify anything beyond his own isolated experience. *See Craig*, 643 F.3d at 1310 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality.") (internal quotation omitted). Further, even if Plaintiff identified a pertinent policy or custom, Plaintiff cannot hold GEO Corp. liable if Nurse Amede's and Dr. Heller's conduct did not cause a constitutional violation. *See id.* (requiring

that there be an underlying constitutional violation). As such, Plaintiff failed to state a claim against GEO Corp.

C. Claims Against Warden Maye

Plaintiff claims Warden Maye is liable for his deliberate indifference to serious medical needs and his failure to train or otherwise establish policies. In support, Plaintiff alleged Warden Maye failed to track the medical complaints and grievances lodged against South Bay employees during and after his surgery. Liberally construed, Plaintiff's claim against Warden Maye is one of vicarious liability or supervisory liability.

Vicarious liability, as already mentioned, is not cognizable under § 1983. *See Hartley,* 193 F.3d at 1269. As for whether Warden Maye can be held liable under a theory of supervisory liability, Plaintiff does not provide any allegations that Warden Maye personally participated in a constitutional violation. Plaintiff also fails to provide any allegations of a widespread abuse, an instruction to subordinates to act unlawfully, or an awareness that subordinates would act unlawfully. *See Gonzalez*, 325 F.3d at 1234.

While Plaintiff argues there is a custom or policy, like his claim against GEO Corp., Plaintiff's allegations are vague and conclusory in articulating a particular procedure. His own isolated incident is insufficient to prove the existence of a pertinent custom or policy. *See Craig*, 643 F.3d at 1310. At any rate, because Plaintiff failed to state a claim against Nurse Amede and Dr. Heller, Warden Maye cannot be held liable for failing to supervise acts that were not unconstitutional. *See Cottone*, 326 F.3d at 1360 (requiring that a constitutional violation transpired). Therefore, Plaintiff failed to state a constitutional claim against Warden Maye.

D. Official Capacity (*Monell*) Claims

To the extent there are any official capacity claims against any of the Defendants, Plaintiff has failed to state a claim. First, as previously mentioned, Plaintiff failed to adequately identify a pertinent policy, custom, or practice. *See McDowell*, 392 F.3d at 1289. More importantly, because the individual capacity claims do not plausibly establish a constitutional violation, any official capacity claims must fail. *See Cooper*, 403 F.3d at 1221 (requiring that there be a constitutional violation). As such, any official capacity claims should be dismissed for failure to state a claim.

E. <u>Supplemental Jurisdiction—State Law Claims</u>

Federal courts may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Therefore, to the extent any state law claims were raised, they should be dismissed.

## VII. Recommendations

Based on the foregoing, the federal claims should be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). As for the state law claim, it should be **DISMISSED without prejudice**. *See* 28 U.S.C. § 1367. It is further recommended that this civil action be **CLOSED**.

Plaintiff is cautioned that arguments not raised before a Magistrate Judge cannot be raised for the first time in objections to this report. *See Starks v. United States*, Case No. 09-22352-CV-MIDDLEBROOKS, 2010 WL 4192875 at *3 (S.D. Fla. Oct. 19, 2010). Indeed, when a party raises an argument for the first time in an objection to a Report, the Court may exercise its discretion and decline to consider the argument. *Daniel v. Chase Bank USA, N.A.,* 650 F. Supp. 2d 1275, 1278 (N.D. Ga. 2009) (citing *Williams v. McNeil*, 557 F. 3d 1287 (11th Cir. 2009)).

Objections to this Report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo*

determination by the District Court Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Signed this 8th day of October, 2020.

UNITED STATES MAGISTRATE JUDGE

CC:    **Felix Ortiz**
       849722
       South Bay Correctional Facility
       Inmate Mail/Parcels
       600 U S Highway 27 South
       South Bay, FL 33493-2233
       PRO SE